**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**RICHARD KIDD,**

        **Plaintiff,**

**-vs-**          **Case No. 6:15-cv-535-Orl-DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

_____

**MEMORANDUM OPINION AND ORDER**

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying his claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **REVERSED** and **REMANDED**.

## I.    BACKGROUND

### A.    Procedural History

Plaintiff filed for a period of disability, DIB and SSI benefits on October 18, 2011, alleging an onset of disability on April 1, 2010, due to attention deficit hyperactivity disorder ("ADHD"),

bipolar disorder, sleep apnea, and panic attacks[1]. R. 58, 106, 112. His application was denied initially and upon reconsideration. R. 150-73, 213-31. Plaintiff requested a hearing, which was held on September 3, 2013, before Administrative Law Judge Aaron Morgan (hereinafter referred to as "ALJ"). R. 51-73. In a decision dated October 10, 2013, the ALJ found Plaintiff not disabled. R. 31-45. Plaintiff timely filed a Request for Review of the ALJ's decision, and the Appeals Council denied review on January 30, 2015. R. 2-7. Plaintiff filed this action for judicial review on April 1, 2015. Doc. 1.

### B. Medical History and Findings Summary

Plaintiff was forty-eight years old at the time of the hearing. R. 55. He completed a GED and has past work experience as a semi-truck driver; exterminator; sales representative in building supplies; and a pressure washer. R. 55, 71, 255.

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of ADHD, bipolar disorder, sleep apnea, and panic attacks. R. 132. Additionally, Plaintiff's treating psychiatrist diagnosed him with agoraphobia. R. 68. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from bipolar disorder, anxiety, and ADHD, which were "severe" medically determinable impairments, but were not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 36. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform a full range of work at all levels, limited to simple, routine tasks involving up to 3-step commands with only occasional changes in the work setting and occasional judgment or decision making; and only occasional interaction with the general public and co-workers. R. 39. Based upon Plaintiff's RFC, the ALJ determined that he could perform past relevant work as

---

[1] Plaintiff had filed a previous application on May 3, 2007 which was denied initially and on reconsideration; the ALJ dismissed his request for hearing for failure to appear on May 25, 2010, and this previous decision was not appealed. R. 34. The supporting medical records for that application are not in the Administrative Record currently before the Court.

as a pressure washer/paint cleaner. R. 44. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 45.

Plaintiff now asserts two points of error. First, he argues that the ALJ erred in determining that he had the residual functional capacity to perform work at all levels with mental functioning limitations after failing to adequately consider and weigh the opinion of his treating psychiatrist. Second, he contends the ALJ erred by improperly evaluating his credibility regarding his subjective complaints. For the reasons that follow, the decision of the Commissioner is **REVERSED** and **REMANDED**.

## II.     STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery*

*v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent his from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f).

## III.    ISSUES AND ANALYSIS

### A.    RFC and the treating psychiatrist's opinion

Plaintiff argues that the ALJ erred by determining he had the RFC to perform a full range of work at all levels with certain non-exertional limitations after failing to adequately consider and provide adequate weight to the opinion of Plaintiff's treating psychiatrist, Dr. Birkmire, who opined that Plaintiff had marked limitations in his activities of daily living, social functioning, and concentration, persistence or pace, and had experienced four or more episodes of decompensation within a twelve-month period. R. 369. The Commissioner contends that substantial evidence supports the ALJ's decision not to assign Dr. Birkmire's opinions significant weight. Doc. 27 at 4.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of

the claimant's condition and the medical consequences thereof. *Id.* The Regulations establish a "hierarchy" among medical opinions that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of nonexamining physicians, treating physicians' opinions are given more weight than non-treating physicians; and the opinions of specialists are given more weight on issues within the area of expertise than those of nonspecialists." *McNamee v. Social Security Admin.*, 162 F. App'x 919, 923 (11th Cir. Jan. 31, 2006) (unpublished) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(f), 416.927(f).

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). In addition to evidence from "acceptable medical sources," such as licensed physicians and psychologists, the ALJ may use evidence from "other sources," as defined in 20 CFR 404.1513(d) and 416.913(d), to show the severity of the individual's

impairment(s) and how it affects the individual's ability to function. These sources include medical sources who are not "acceptable medical sources," such as licensed clinical social workers, and therapists.

In this case, the ALJ determined Plaintiff had the RFC to perform a full range of work at all exertional levels but with the following mental and social functioning limitations: simple, routine tasks involving up to 3-step commands and only occasional changes in the work setting and occasional judgment or decision making; and only occasional interaction with the general public and co-workers. R. 39. Based on the ALJ's RFC determination, he concluded that Plaintiff could perform his past relevant work as a pressure washer/paint cleaner and, therefore, was not disabled. R. 24, 44.

In making the RFC determination, the ALJ indicated that he "has considered the opinions of Dr. Birkmire and gives them no significant weight" (R. 43) because medical records showed that Plaintiff had been receiving treatment from Dr. Birkmire since at least 2009, but "treatment notes from Birkmire Behavioral (both Dr. Birkmire and a LCSW) [were] not that extensive"; the lack of inpatient treatment contradict[ed] Dr. Birkmire's claims; records from Birkmire Behavioral Health documented an improvement in symptoms with medication; there was evidence of non-compliance, significant periods of time during which the claimant was not taking his medications; treatment notes from Dr. Birkmire himself did not contain any hand written evaluations, mainly check-offs and reported symptoms from the claimant; and Dr. Birkmire's handwriting was "nearly illegible." R. 43.

On a November 10, 2011 Mental Impairment Questionnaire for RFC, Dr. Birkmire opined that Plaintiff would have the following signs and symptoms: anhedonia or pervasive loss of interest in almost all activities; appetite disturbance with increased weight; decreased energy; generalized persistent anxiety; mood disturbances; psychomotor retardation; persistent disturbances in mood and affect; paranoid thinking or inappropriate suspiciousness; intense and unstable interpersonal relationships and impulsive and damaging behavior; perceptual or thinking disturbances;

hallucinations or thinking disturbances; emotional lability; inflate self-esteem when manic; and easy distractibility. R. 327, 428. Additionally, Dr. Birkmire opined that Plaintiff was unable to meet competitive standards in all mental abilities and aptitudes to do unskilled work, except in the areas of the ability to understand and remember very short and simple instructions and in the area of the ability to carry out very short and simple instructions, where it was noted that he was seriously limited, but not precluded. R. 328, 429. Dr. Birkmire further opined that Plaintiff would be unable to meet competitive standards in his ability to perform skilled and semiskilled work and had a "marked" limitation in his activities of daily living; difficulty in maintaining social functioning; deficiencies in concentration, persistence or pain; and had four or more repeated episodes of decompensation. R. 329, 430.

On July 10, 2013, just prior to the hearing, Dr. Birkmire completed another questionnaire listing Plaintiff's diagnosis of Bipolar I with manic episodes more than thirty day cycles; symptoms of insomnia; "excessive behavior with grandiosity"; and Dr. Birkmire's opinion that Plaintiff is not a malingerer; his prognosis is guarded; he has serious limitations in understanding, remembering and carrying out simple instructions, in maintaining attention for two hour segments, being punctual within customary, usually strict tolerances, in performing at a consistent pace; in his ability to deal with normal work stresses, and travel in unfamiliar places; his condition causes good and bad days; and that he would be absent from work more than four days per month. R. 517-20. Dr. Birkmire further noted that Plaintiff's condition "ha[d] gotten progressively worse with persistent depression lasting for a year and a half." R. 520. Dr. Birkmire opined that Plaintiff "suffers from psychotic symptoms and ideas of reference as well as paranoia" and "is one of the sickest patients in my practice and it would be heinous if disability were to be denied and frankly, nothing short of malfeasance." R. 520.

At the hearing, Dr. Birkmire testified that he had treated Plaintiff for more than ten years for Bipolar I and ADHD; he prescribed Plaintiff the medication Clozapine, "which is reserved for exceptionally ill patients"; the lowest global assessment of functioning score he had assigned to Plaintiff was 15, with the highest being 45. R. 67. Dr. Birkmire testified that, in 2000 and 2009, Plaintiff had numerous inpatient hospitalizations including being Baker Acted for being suicidal and painting a red cross on the bedroom wall with his own blood; Plaintiff had been compliant with medications and had not missed an appointment in the two years prior to the hearing; he hears voices and has suicidal thoughts on a regular basis; he has agoraphobia rendering him incapable of leaving the house without his wife; his cognition is disorganized and he has many episodes of thought blocking and interruptions from hearing voices. R. 67-68. Dr. Birkmire also testified that Plaintiff had not had more frequent inpatient hospitalizations because he did "everything he can to prevent those because the psychiatric hospitals provide little, if any care." R. 68-69.

Plaintiff contends that the ALJ's decision was not based on substantial evidence because the reasons the ALJ asserted for providing "no significant weight" to Dr. Birkmire's opinion were not sufficient. Plaintiff argues that the ALJ's assertion that the treatment notes from Dr. Birkmire and the LCSW "are not that extensive" is without merit. Dr. Birkmire testified he had treated Plaintiff since 2000 when he was hospitalized at Florida Hospital in March of 2000. R. 66. However, the Administrative Record in this appeal only contains medical records going back to 2009, since the alleged onset date is April 1, 2010, and Plaintiff's previous application had been denied. Plaintiff testified that he saw Dr. Birkmire at Ashlawn Consulting[2] for medications on a monthly basis from 2011 through the time of the hearing (R. 59-67) and he saw the therapist and Licensed Social Worker, Ms. Laudadio, weekly for counseling. R. 67.

---

[2]Dr. Birkmire was previously with Birkmire Behavioral Healthcare. R. 334.

As an initial matter, it is not true that Dr. Birkmire's records are "illegible." Although they are not perfectly legible and are handwritten, they are 90% legible, and some of the difficult words to make out are the names of medications. The state reviewing psychologist (presumably familiar with such medical notations) could make out what Dr. Birkmire said enough to form an opinion. R. 124. The reviewing psychologist relied on them in reaching her determination, and the ALJ relied on her opinion in turn. R. 44 (relying on opinion of state agency psychological consultant, Dr. Maki). Thus, to the extent the ALJ discounted Dr. Birkmire's opinion because the records were "illegible" it was not based on substantial evidence.

More importantly, while not overly voluminous, there were a significant number monthly treatment notes from Dr. Birkmire's practice groups, Birkmire Behavioral and Ashlawn Consulting, such that a lack thereof does not, in and of itself, contradict Dr. Birkmire's claims that he treated Plaintiff regularly. Dr. Birkmire testified at the hearing that Plaintiff had been compliant with treatment for the two years prior to the hearing. R. 68. Contrary to the ALJ's determination, Plaintiff did receive treatment from Dr. Birkmire[3] on a consistent monthly basis from June 2011–around the time of his "psychotic break"–to July 2013. R. 331, 333, 335, 342, 346, 350, 351, 372-93 (every month from June 2011 to June 2013); *see also* R. 352-53 (February and August 2010-discussing move to Wisconsin and return to wife in Florida). He also saw the therapist for numerous sessions between August 2011 and July 2013, although not consistently every single week in mid to late 2012 and the first half of 2013, until the hearing September 2013. R. 332 336, 337-40, 343 344-45, 347-48 (multiple appointments in August, September, October 2011); R. 522-34 (August, September, October, and November 2012 and January, April, May, July 2013).

According to Dr. Birkmire's records over the period June 2011 to September 2013, and his testimony at the hearing, Plaintiff had been compliant with treatment for the two years prior to the

---

[3]On two occasions, Plaintiff saw a different psychiatrist for medication management in the same practice. R. 378.

hearing (R. 68), yet Plaintiff continued to experience mental health issues. The ALJ cited evidence of Plaintiff's non-compliance or "significant periods of time during which the claimant was not taking his medications" without noting that Plaintiff's non-compliance had stopped as of June 2011. After Plaintiff's self-described "psychotic break," in June 2011, the medical records show that Plaintiff regularly saw Dr. Birkmire and took his medications, although he had his medications adjusted as he experienced side effects. When the ALJ asked Plaintiff at the hearing why he did not take the medication as prescribed, Plaintiff admitted that there was a time when he previously did not, but had changed his behavior: "I do now. I didn't. As part of the disease you feel like you're better and you don't need the medications. I did that for a number of years until this last, when I had this psychotic breakdown." R. 61.

Moreover, "[f]ederal courts have recognized a mentally ill person's noncompliance with psychiatric medications can be, and usually is, the 'result of [the] mental impairment [itself] and, therefore, neither willful nor without a justifiable excuse.'" *Pate-Fires v. Astrue*, 564 F.3d 935, 945 (8th Cir. 2009) (quoting *Mendez v. Chater*, 943 F.Supp. 503, 508 (E.D.Pa. 1996)); *see also Frankhauser v. Barnhart*, 403 F.Supp.2d 261, 277–78 (W.D.N.Y. 2005) (holding an ALJ must take into account whether a mentally ill (bipolar and personality disordered) claimant's failure to comply with prescribed treatment results from the mental illness itself); *Brashears v. Apfel*, 73 F.Supp.2d 648 650–52 (W.D.La. 1999) (remanding case for consideration of whether the claimant's noncompliance with prescribed treatment was excusable due to a mental impairment). The ALJ failed to recognize that Plaintiff had been compliant with medications since June 2011 or to take into account that Plaintiff's lack of compliance in the previous period may have been due to his mental impairments. Accordingly, the ALJ's decision was not based on substantial evidence in this regard.

The Commissioner contends substantial evidence supports the ALJ's decision not to give Dr. Birkmire's opinions significant weight because, as the ALJ explained, despite their lengthy treatment

history, Dr. Birkmire's treatment notes were "quite limited." R. 43.  The Commissioner points out Plaintiff's earliest dated treatment notes in the Administrative Record are from March 2009 and when he saw Dr. Birkmire for medication management; then he did not return until February 2010, nearly a year later, and reported he was "doing well" on Wellbutrin. R. 352-54.  The Commissioner argues the ALJ correctly found Dr. Birkmire's opinions were wholly out of portion to his own treatment notes demonstrating lengthy and repeated gaps in treatment, only conservative treatment and no indication of inpatient hospitalization, and "improvement with medication." Doc. 27 at 9 (citing R. 43).

The records from Dr. Birkmire's practice document consistent office visits to Dr. Birkmire for medication management and an improvement in *some* of the symptoms Plaintiff experienced with medication, however, given Plaintiff's condition of Bipolar Disorder I with psychotic features (R. 66), as Plaintiff explained, they keep him from "going manic" but unfortunately he has been depressed, and he has side effects of short-term memory loss, anxiety, and fatigue. R. 61. He also continued to hear voices, as documented in Dr. Birkmire's records since the "psychotic break" in June 2011. R. 61. Dr. Birkmire did change Plaintiff's medications and adjusted them due to Plaintiff's complaints of side effects or ineffectiveness.

During those two years while on medications the entire time, Plaintiff continued to experience significant issues. On October 10, 2011, the therapist noted that Plaintiff presented with an anxious mood; was scared and depressed; had a limited judgment and insight; had poor concentration; and had been experiencing hallucinations. R. 332. Dr. Birkmire indicated that Plaintiff's affect was brighter, but he remained cautious. R. 333. Dr. Birkmire opined that Plaintiff had been under his care for Bipolar Disorder from ten years, and was "currently very unstable and unable to work." R. 334. On November 10, 2011, Dr. Birkmire indicated that Plaintiff was paranoid in public, so he added an

additional medication, Zyprexa. R. 331. During the April 25, 2012 visit with Dr. Birkmire, Plaintiff's depression level was noted to be 10/10, and his anxiety level at a 7/10. R. 386.

In May 2012, Plaintiff's depression level was at a 9/10. R. 385. On May 29, 2012, Plaintiff informed Dr. Birkmire that he continued to hear voices and TV noise; had a fear of leaving the house; was still depressed; and his anxiety was about the same. R. 384. On October 2, 2012, Plaintiff was experiencing continued depression rated at 7/10 and anxiety rated at 6-7/10, and he was having problems staying focused; he was prescribed Adderall. R. 379. Plaintiff was seen by the therapist on November 13, 2012 noting that he was able to leave his house the prior week; however, he had a restricted affect; appeared overwhelmed; had racing thoughts; had a poor ability to focus on tasks; and had poor sleep. R. 582. On January 8, 2013, Plaintiff indicated that his depression was rated at 7/10 and his anxiety at a 6/10; his sleep was poor. R. 377. On January 30, 2013, the therapist indicated that Plaintiff reported he had not been out of bed the prior three days. R. 525. During the mental status evaluation, Plaintiff was fidgety; had a blunted affect; was experiencing racing thoughts; had limited judgment/insight; had poor concentration; and that he was unstable. R. 525. Plaintiff returned to the therapist on July 2, 2013 noting that  Plaintiff's affect was flat; his mood was anxious; his judgment/insight was limited; and his concentration was poor, although he reported that he was without agitation for the first time in a month. R. 522.

Although the Commissioner argues Plaintiff had "lengthy and repeated gaps in treatment, the Commissioner concedes that Plaintiff consistently presented to Dr. Birkmire monthly from July 2011 to June 2013, but contends that "[w]hile his mood and anxiety levels fluctuated, his depression was severe once in April 2012," implying Plaintiff's depression was not at issue during the other appointments. The forms defined a scale of 1 to 10 with 1 being none, and 10 being severe. *See, e.g.* R. 391. In most of the records the Commissioner cites, Dr. Birkmire recorded Plaintiff's "mood" or "depression" as falling in the 7 to 9 range, or tending towards severe, up until early 2013; even when

Plaintiff's depression was more mild, his anxiety generally remained in the more severe range. Doc. 27 at 10 (citing R. 331, 333, 335, 342, 344, 346, 372-92).

The Commissioner also very misleadingly argues that "[f]rom February 2012 through August 2013, he consistently denied anxiety and depression (Tr. 436, 441, 448, 451, 459, 463, 467, 474, 478, 481, 488, 493, 497, 548, 553)." Doc. 27 at 12. However, the pages the Commissioner cites are entirely from the form-style medical notes–*not* from his treating psychiatrist–but from Plaintiff's treating internist who treated him for complaints of vertigo, back pain, and diabetes. The Commissioner's other argument that Dr. Birkmire's opinion is undermined because "Plaintiff's extensive work history also conflicts with the extreme limitations Dr. Birkmire assessed" in that "Plaintiff worked various jobs at the substantial gainful activity level while under Dr. Birkmire's care and even when his symptoms were at their most extreme (Tr. 66, 233, 274)" is also misleading. Plaintiff was not working at all in June 2011 when he had what he described as a "psychotic" break and was arrested for domestic violence (he was subsequently placed on probation). R. 351. Although Plaintiff was employed full-time in 2009 and made $28,976, he stopped driving a tractor trailer for Wel Companies Inc. in April 2010 because, as he testified, he had several accidents for them and he felt like he was not getting the medical care that he needed; he was manic most of that time and needed treatment. R. 57, 233-34. He did not work again after that time, according to the Social Security earnings record. R. 233. Although Dr. Birkmire testified that he had treated Plaintiff since 2000, those treatment records are not part of the Administrative Record and it is not possible to tell the severity of Plaintiff's symptoms during that time, while he was employed.

In this case, the ALJ's reasons for giving Dr. Birkmire's opinions "no significant weight" (R. 43) were not based on substantial evidence. Treatment notes from Dr. Birkmire, who Plaintiff was consistently nearly every month for two years were detailed, the psychiatrist did "everything he could" to keep patients from relying on inpatient treatment, Plaintiff's depression, concentration, and

agoraphobia symptoms remained, even with medication, and Plaintiff's "significant periods of time of non-compliance" were admittedly before his "psychotic break" and arrest for domestic violence in mid 2011. To the extent the ALJ found the handwritten treatment notes from Dr. Birkmire did not contain sufficient evaluations or were "nearly illegible," Dr. Birkmire testified at the hearing to his history with Plaintiff and the symptoms. Accordingly, the ALJ's decision was not based on substantial evidence and must be **REVERSED** and **REMANDED**.

In rejecting Dr. Birkmire's opinion, the ALJ failed to include the limitations the psychiatrist opined, including those of serious limitations performing at a consistent pace. R. 519. The reviewing state agency physician–on which the ALJ did rely–also opined that Plaintiff would have sustained concentration and persistence limitations. R. 126. The ALJ did not include any restriction in sustained pace in Plaintiff's RFC. The ALJ also did not include a pace limitation in the hypothetical to the VE, although Plaintiff's attorney asked the VE if an individual would be able to sustain competitive employment if he were off task 15% of the day, and the VE testified he would not. R. 72. There is a significant difference between concentration and pace–impacted by Plaintiff's Bipolar Disorder I and depression, which contributed to Plaintiff's limitation in pace. However, the ALJ failed to distinguish between concentration and pace. Other courts have noted that merely limiting a claimant to "simple tasks" or "unskilled work," does not adequately account for significant limitations in pace as opposed to concentration. The 6th Circuit held that a hypothetical question posed to a VE that omitted the speed and pace-based restrictions considered by a physician and the ALJ did not accurately represent the claimant's limitations because a "plaintiff may be unable to meet quotas, stay alert, or work at a consistent pace, even at a simple, unskilled, routine job." *Ealy* v. *Commissioner of Soc. Sec.*, 594 F.3d 504, 516–17 (6th Cir. 2010) (reversing where ALJ's streamline hypothetical should have included the restriction that the speed of claimant's performance could not be critical to his job); *Edwards v. Barnhart*, 383 F.Supp.2d 920, 930–31 (E.D.Mich. 2005) (a

-14-

hypothetical limiting a claimant to "jobs entailing no more than simple, routine, unskilled work" was not adequate to convey moderate limitation in ability to concentrate, persist, and keep pace) ("Plaintiff may be unable to meet quotas, stay alert, or work at a consistent pace, even at a simple, unskilled, routine job."); *see also Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir. 2004) (allowing VE to consider only one- or two-step tasks did not account for limitations of pace). The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks, whether simple or complex, and does not address a claimant's limitations from mood swings. *See Craft v. Astrue*, 539 F.3d 668, 677–78 (7th Cir. 2008) (restricting hypothetical to unskilled work does not consider a claimant's difficulties with memory, concentration or mood swings); *see also* SSR 85–15, 1985 WL 56857 (1985) ("Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's [mental] condition may make performance of an unskilled job as difficult as an objectively more demanding job.").

The Third Circuit, in *Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir. 2004), explained the importance of the ALJ not substituting "a limitation to one to two step tasks" for a limitation in pace within the hypothetical question posed to the vocational expert, which is very similar to the limitation the ALJ found in this case by limiting Plaintiff's RFC to "simple, routine tasks with up to three-step demands." R. 39, 71.  In *Ramirez,* the court found:

> [T]his limitation does not take into account deficiencies in pace. Many employers require a certain output level from their employees over a given amount of time, and *an individual with deficiencies in pace might be able to perform simple tasks, but not over an extended period of time*. If [plaintiff] often suffers deficiencies in pace and this had been included in the hypothetical, vocational expert Stratton may have changed her answer as to whether there were jobs in the local or national economy that [plaintiff] could perform. In fact, the vocational expert testified that each of the jobs suitable to [plaintiff] (assembler, packer, and inspector) would have daily production quotas and that [plaintiff] would have to maintain a certain degree of pace to maintain those jobs.

*Id.* (emphasis added). In this case, the VE testified–in response to the hypothetical that did not include a limitation on pace–that Plaintiff could perform his past relevant work as a power washer. R. 71-72. The VE also testified that an individual who was off task for 15% of the workday or absent four days per month would not be tolerated in a competitive environment. R. 72-73. As part of the RFC determination (or hypothetical), the ALJ did not ask the VE to include a restriction on pace. As such, the ALJ's decision was not based on substantial evidence and must be **REVERSED** and **REMANDED**.

### B.     Plaintiff's testimony

Plaintiff asserts that the ALJ erred in evaluating his subjective symptoms as supported by his testimony. He argues that the ALJ erred in finding that he was "not entirely credible" after failing to make an adequate credibility finding.

Plaintiff's mental impairments are non-exertional impairments. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Pain and other subjective impairments can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement

as to his symptoms is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A). Where an ALJ decides not to credit a claimant's testimony about subjective symptoms, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Plaintiff testified at the administrative hearing that, despite his medications, he was still depressed and suffered from short-term memory loss, fatigue, anxiety, paranoia, and auditory hallucinations. He stated that the medications caused dehydration, fatigue, sensitivity to light and humidity, short term-memory problems, dizziness, and concentration/focus problems. R. 61-62. Plaintiff drove only occasionally because he got anxious and paranoid when he drove. R. 64.

The ALJ found, based on "the objective medical evidence of record," Plaintiff's exacerbations have occurred when he is off medication; however, when he takes his medications as prescribed, his symptoms are largely controlled." R. 43. The ALJ also discounted his testimony because:

> [T]he description of symptoms and limitations, which the claimant has provided throughout the record, has generally been inconsistent and unpersuasive. Another factor influencing the conclusions reached in this decision is the claimant's generally unpersuasive appearance and demeanor while testifying at the hearing. It is emphasized that this observation is only one among many being relied on in reaching a conclusion regarding the credibility of the claimant's allegations and the claimant's residual functional capacity.

R. 44.

The ALJ also found that "a review of the claimant's work history shows that he worked sporadically prior to his alleged onset date (no work in 2007 and less that SGA in 2008)" (R. 44), without specifically noting that was the time period during which Plaintiff had a prior application for disability pending (which was ultimately denied for failure to appear at the hearing) and presumably

-17-

alleged a similar condition. *See* R. 34. Moreover, Plaintiff worked steadily from 1998 through 2006 with indexed earnings of $20,000 or more. R. 233. As explained above, the ALJ's decision regarding the supporting medical evidence from Dr. Birkmire is not based on substantial evidence. To the extent the ALJ rejected Plaintiff's testimony because his symptoms appeared "largely controlled with medication," the ALJ's credibility determination is not based on substantial evidence either.

On remand, the ALJ will address the credibility of any testimony given by Plaintiff.

**IV.  CONCLUSION**

For the reasons set forth above, the ALJ's decision is not consistent with the requirements of law and is not supported by substantial evidence. Accordingly, the decision of the Commissioner is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment in accordance with the decision and close the file.

**DONE** and **ORDERED** in Orlando, Florida on, 2016.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record